NOTICE
This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

2020 IL App (4th) 200305-U

NO. 4-20-0305

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
December 2, 2020
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| *In re* S.S., a Minor | ) | Appeal from the |
| | ) | Circuit Court of |
| (The People of the State of Illinois, | ) | Macon County |
|     Petitioner-Appellee, | ) | No. 18JA212 |
|     v. | ) | |
| Shemika T., | ) | Honorable |
|     Respondent-Appellant). | ) | Thomas E. Little, |
| | ) | Judge Presiding. |

JUSTICE KNECHT delivered the judgment of the court.
Presiding Justice Steigmann and Justice DeArmond concurred in the judgment.

**ORDER**

¶ 1  *Held*: The appellate court affirmed, concluding the trial court's findings respondent was an unfit parent and it was in the minor's best interest to terminate respondent's parental rights were not against the manifest weight of the evidence.

¶ 2  Respondent mother, Shemika T., appeals from the trial court's judgment terminating her parental rights to S.S. (born September 18, 2018). Respondent argues the court's findings she was an unfit parent and it was in the minor's best interest to terminate her parental rights are against the manifest weight of the evidence. We disagree and affirm.

¶ 3          I. BACKGROUND

¶ 4        A. Adjudication of Neglected

¶ 5  In September 2018, the State filed a petition for adjudication of wardship, alleging, in part, the minor was neglected in that her environment was injurious to her welfare because respondent failed to correct the conditions in three prior juvenile cases where she surrendered her

parental rights (705 ILCS 405/2-3(1)(b) (West 2016)). That same month, the trial court entered an order granting temporary custody to the Department of Children and Family Services (DCFS).

¶ 6          On December 13, 2018, the trial court entered an adjudicatory order finding the minor to be neglected. As a factual basis for its finding, the court provided the following: "Mother surrendered rights on [three] other children after inability to correct the conditions—history of [four] medical neglect[,] [two] inadequate supervision[,] [and] one risk of harm[.] Long history with DCFS[.]"

¶ 7          In January 2019, the trial court entered a dispositional order adjudicating the minor a ward of the court and placing guardianship and custody with DCFS.

¶ 8                              B. Motion to Terminate Parental Rights

¶ 9          In January 2020, the State filed a motion to terminate respondent's parental rights. The State alleged respondent was an unfit parent as she failed to (1) maintain a reasonable degree of interest, concern, or responsibility as to the minor's welfare (750 ILCS 50/1(D)(b) (West 2018)); (2) make reasonable efforts to correct the conditions that were the basis for the removal of the minor during any nine-month period following the adjudication of neglected (750 ILCS 50/1(D)(m)(i) (West 2018)); and (3) make reasonable progress toward the return of the minor to her care within certain nine-month periods following the adjudication of neglected, namely December 13, 2018, to September 13, 2019, and April 2, 2019, to January 2, 2020 (750 ILCS 50/1(D)(m)(ii) (West 2018)). The State further alleged it was in the minor's best interest to terminate respondent's parental rights and appoint DCFS as guardian with the power to consent to adoption.

¶ 10                             C. Fitness Hearing

¶ 11    In March 2020, the trial court held a fitness hearing. The court heard testimony from a DCFS child welfare specialist who had been assigned to the minor's case since October 1, 2018, a DCFS Medicaid counselor who served as a parent educator for respondent between May 2019 and January 2020, and a program manager for a group home who served as a counselor for respondent between January and June 2019. The following is gleaned from the testimony presented.

¶ 12                            1. *Recommended Goals and Services*

¶ 13    In November 2018, respondent completed an integrated assessment. Based on that assessment, it was recommended respondent obtain adequate housing and employment, engage in parenting education, and resolve any outstanding legal obligations. In March 2019, an additional recommendation was issued for respondent to engage in mental health services.

¶ 14                            2. *Adequate Housing and Employment*

¶ 15    Respondent obtained adequate housing and employment. As to employment, she began working a daytime shift at a restaurant in July 2019.

¶ 16                            3. *Parenting Education*

¶ 17    In May 2019, respondent completed a parenting assessment. Based on that assessment, it was recommended respondent complete the Protective Factors curriculum, the empathy portion of the Nurturing Parenting curriculum, and the Common Sense Parenting curriculum. Respondent only completed the Protective Factors curriculum. Between May 2019 and January 2020, respondent missed 18 of 32 appointments. Of the missed appointments, some were cancellations, and some were no-shows. Respondent reported her employment interfered with her attendance. The lack of attendance precluded a finding of success on the parenting goal.

¶ 18                                    3. *Mental Health Services*

¶ 19            In April 2019, respondent, after being initially resistant to any mental health services, completed a mental health assessment. Based on that assessment, it was recommended respondent attend weekly counseling to (1) learn to identify and address anxiety symptoms, (2) learn to identify and address depression and loneliness symptoms, (3) participate in psychotherapy to process present relationships and to identify strengths and weaknesses to build healthy relationship habits, (4) participate in cognitive behavioral therapy to recognize unhealthy relationships and how to correct or avoid them, and (5) learn to process past relationships and traumas. Respondent missed her first counseling appointment in April, which was a no call, no-show. Between May and June, respondent had only two absences, one of which she rescheduled. During that time, respondent was making some progress on working through her feelings about the separation from her children and on learning coping skills. Between July and September, respondent attended only 3 out of 10 appointments. Three of the missed appointments were no call, no-shows; one was due to a job interview; and three were due to work conflicts. Between November 2019 and January 2020, respondent missed three out of eight appointments. The lack of attendance precluded a finding of success on the mental health goal.

¶ 20                                  4. *Outstanding Legal Matters*

¶ 21            Respondent was arrested and found to be in violation of her probation. She admitted to a probation violation, was discharged from her probation unsuccessfully, and spent some time in jail.

¶ 22                                          5. *Visitation*

¶ 23            Prior to June 2019, respondent consistently attended visitation with the minor,

which was supervised and occurred two to three times a week. She then missed two visits in June, six visits in July, three visits in August, one visit in September, four visits in October, five visits in November, six visits in December, and five visits in January 2020. Of the missed visits, some were no call, no-shows, and others were cancelled due to work conflicts. The visits which respondent attended always went well.

¶ 24                                    6. *Caseworker's Assessment*

¶ 25        Respondent was evaluated and rated unsatisfactory on two service plans. The caseworker testified she worked with respondent to accommodate her work schedule, but respondent continued to struggle with balancing her attendance at services and visitations with her attendance at work. The caseworker believed respondent did not understand the importance of consistency despite their repeated discussions on the subject. The caseworker further believed respondent would not be able to meet minimal parenting standards within six to nine months.

¶ 26                                    7. *Trial Court's Finding*

¶ 27        Based on this evidence, the trial court found respondent was an unfit parent for all the reasons alleged in the State's motion to terminate parental rights.

¶ 28                                    D. Best-Interest Hearing

¶ 29        In June 2020, the trial court held a best-interest hearing. The court received a best-interest report and heard testimony from respondent and the DCFS child welfare specialist who had been assigned to the minor's case since October 1, 2018. The following is gleaned from the evidence presented.

¶ 30        The minor, a healthy child who was almost two years old at the time, had been placed with her foster family since shortly after her birth. The foster family included two foster

parents and four foster siblings ranging from approximately 3 years of age to 10 years of age. The minor was loved by her foster family. The foster parents remained consistent and supportive of the minor and were willing and able to continue to provide for the minor's interests and needs. The foster parents were willing to provide the minor with permanency through adoption.

¶ 31    Respondent began missing visitations with the minor in June 2019. She missed two visits in June, six visits in July, three visits in August, one visit in September, four visits in October, five visits in November, six visits in December, and five visits in January 2020. The missed visits, along with the inconsistencies in attending to her services, prevented respondent from obtaining any movement towards reunification. The visits which respondent attended always went well, and the minor and respondent appeared to have a good relationship.

¶ 32    Respondent testified she had been engaged with visits since March 2020. In April 2020, visitations became virtual and occurred once a month. Respondent testified she missed and loved the minor. She also testified the minor would call her "mom." Respondent requested the trial court not terminate her rights.

¶ 33    The caseworker believed it would be in the minor's best interest to terminate parental rights given the minor's need for permanency.

¶ 34    Based on this evidence, the trial court, after considering the statutory best-interest factors found in section 1-3(4.05) of the Juvenile Court Act of 1987 (Juvenile Court Act) (705 ILCS 405/1-3(4.05) (West 2018)), found it would be in the minor's best interest to terminate respondent's parental rights. The court entered a written order terminating respondent's parental rights.

¶ 35    This appeal followed.

¶ 36                                    II. ANALYSIS

¶ 37            On appeal, respondent argues the trial court's findings she was an unfit parent and it was in the minor's best interest to terminate her parental rights are against the manifest weight of the evidence. The State disagrees.

¶ 38                                A. Unfitness Finding

¶ 39            Respondent asserts the trial court's finding she was an unfit parent is against the manifest weight of the evidence.

¶ 40            In a proceeding to terminate parental rights, the State must prove parental unfitness by clear and convincing evidence. *In re N.G.*, 2018 IL 121939, ¶ 28, 115 N.E.3d 102. A trial court's finding of parental unfitness will not be disturbed on appeal unless it is against the manifest weight of the evidence. *Id.* ¶ 29. A finding is against the manifest weight of the evidence "only where the opposite conclusion is clearly apparent." *Id.*

¶ 41            The trial court found respondent was an unfit parent as defined in section 1(D)(m)(ii) of the Adoption Act (750 ILCS 50/1(D)(m)(ii) (West 2018)). Section 1(D)(m)(ii) provides, in part, a parent will be considered an "unfit person" if he or she fails "to make reasonable progress toward the return of the child to the parent during any [nine]-month period following the adjudication of neglected ***." *Id.*

¶ 42            "Reasonable progress" has been defined as "demonstrable movement toward the goal of reunification." (Internal quotation marks omitted.) *In re C.N.*, 196 Ill. 2d 181, 211, 752 N.E.2d 1030, 1047 (2001). This is an objective standard. *In re F.P.*, 2014 IL App (4th) 140360, ¶ 88, 19 N.E.3d 227. The benchmark for measuring a parent's progress toward reunification "encompasses the parent's compliance with the service plans and the court's directives, in light of

the condition which gave rise to the removal of the child, and in light of other conditions which later become known and which would prevent the court from returning custody of the child to the parent." *C.N.*, 196 Ill. 2d at 216-17.

¶ 43    In determining a parent's fitness based on reasonable progress, a court may only consider evidence from the relevant time period. *In re Reiny S.*, 374 Ill. App. 3d 1036, 1046, 871 N.E.2d 835, 844 (2007). Courts are limited to that period "because reliance upon evidence of any subsequent time period could improperly allow a parent to circumvent her own unfitness because of a bureaucratic delay in bringing her case to trial." *Id.*

¶ 44    In this case, a relevant time period was April 2, 2019, to January 2, 2020. During that period, respondent demonstrated a lack of understanding of the importance of consistency. Despite repeated discussions on the subject and attempts to accommodate respondent's work schedule, respondent failed to balance her attendance at services and visitations with her attendance at work. Respondent's absence from service appointments directly hindered progress toward any reunification with the minor. The caseworker further believed respondent would not be able to meet minimal parenting standards to have the minor returned to her care within six to nine months. Given this evidence, we find the trial court's unfitness finding based on respondent's failure to make reasonable progress is not against the manifest weight of the evidence.

¶ 45    As only one ground for a finding of unfitness is necessary to uphold the trial court's judgment, we need not review the other grounds for the court's unfitness finding. *In re Z.M.*, 2019 IL App (3d) 180424, ¶ 70, 131 N.E.3d 1122.

¶ 46                    B. Best-Interest Finding

¶ 47    Respondent asserts the trial court's finding it was in the minor's best interest to

terminate her parental rights is against the manifest weight of the evidence.

¶ 48 In a proceeding to terminate parental rights, the State must prove termination is in the child's best interests by a preponderance of the evidence. *In re D.T.*, 212 Ill. 2d 347, 367, 818 N.E.2d 1214, 1228 (2004). When considering whether termination of parental rights would be in a child's best interest, the trial court must consider several statutory factors within the context of the child's age and developmental needs. See 705 ILCS 405/1-3(4.05) (West 2018).

¶ 49 This court will not reverse a trial court's finding termination of parental rights is in a child's best interests unless it is against the manifest weight of the evidence. *In re Anaya J.G.*, 403 Ill. App. 3d 875, 883, 932 N.E.2d 1192, 1199 (2010). Again, a finding is against the manifest weight of the evidence only where the opposite conclusion is clearly apparent. *Id.*

¶ 50 Respondent contends the trial court's finding is against the manifest weight of the evidence given the minor's relationship with her and her continued persistence to have the minor returned to her care. While the minor's relationship with respondent and respondent's desire to have the minor returned to her care were certainly relevant, the court had to balance the relationship and respondent's desire with the minor's needs for permanency and continuity, factors which favored termination. Given the evidence presented, we find the trial court's finding it was in the minor's best interest to terminate respondent's parental rights is not against the manifest weight of the evidence.

¶ 51                                    III. CONCLUSION

¶ 52 We affirm the trial court's judgment.

¶ 53 Affirmed.